**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT PIKEVILLE**

| | |
|---|---|
| PAINTSVILLE HOSPITAL COMPANY, LLC, *et al.*, | Case No.  7:20-cv-00102-GFVT |
| Plaintiffs, | (Removal from the Circuit Court of Johnson County, Kentucky) |
| v. | |
| AMNEAL PHARMACEUTICALS, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' EMERGENCY MOTION TO REMAND**

## I.     INTRODUCTION

On June 8, 2020, Plaintiffs commenced this action in in the Circuit Court of Johnson County, Kentucky, asserting seven claims, including one Kentucky statutory claim and six Kentucky common law claims, against Defendants. No claim asserted by Plaintiffs arises under any federal statutes. Among other remedies, Plaintiffs seek injunctive relief, compensatory damages, treble damages, punitive damages, and monies towards abating the nuisance created by Defendants.

Notwithstanding the lack of diversity jurisdiction, the lack of a federal claim, and the lack of any other plausible basis for federal jurisdiction, Defendants Walmart Inc. and Wal-Mart Stores East, LP ("Walmart") have removed this action to this Court. *See* Doc. No. 1 ("Removal"). Other Defendants consented to the removal. The same litigants have been doing so systematically in opioid-related litigations around the country, undeterred by a succession of adverse decisions in which motions to remand have been granted, and in which many federal district courts have expressly rejected the same baseless arguments that are asserted in this action.

Defendants have not removed this action because there is a plausible basis for federal jurisdiction. They have done so because they hope to delay any substantive development of Plaintiffs' case interminably. Specifically, they are trying to force this action to disappear into the traffic jam that is the opioid multi-district litigation ("MDL") pending in the Northern District of Ohio. Because this action raises exclusively state law claims, the Court should move swiftly and decisively to thwart Defendants' attempt to abuse the mechanism of removal of state law claims to a federal court, which should be reserved only for those classes of cases that truly belong here.

## II.   ARGUMENT

### A.   The Court Should Immediately Remand this Action on a Summary Basis Without Further Briefing, or, at a Minimum, Schedule an Expedited Hearing.

The Supreme Court has long held that, "[w]ithout jurisdiction[,]" this Court, and any other court, "cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1869). Congress agrees, and has made clear that, "[i]f at *any time* […] it appears that [a] district court lacks subject matter jurisdiction, the case *shall* be remanded." *See* 28 U.S.C. § 1447(c) (emphasis added).[1] The Court need not wait for a response to this motion and does not require *any motion at all*—it is well-settled that a court may remand an action on its own initiative should subject matter jurisdiction be lacking. *See, e.g.*, *Anderson v. Burgess*, No. 1:05-CV-290, 2006 WL 335519, at *1 (E.D. Tenn. Feb. 14, 2006) ("A district court is charged with the duty of continually reexamining its jurisdiction and must *sua sponte* remand cases in which subject matter jurisdiction is lacking.") (citing *Franchise Tax Bd. v. Constr. Laborors Vacation Trust*, 463 U.S. 1 (1983)); *Anusbigian v. Trugreen/Chemlawn, Inc*., 72 F.3d 1253, 1254 (6th Cir. 1996); *Probus v. Charter Comm.*, *LLC*, 234 Fed. Appx. 404, 406 (6th Cir. 2007) (finding that "[c]ourts must examine subject matter jurisdiction ['on their own initiative[']" and that a district court "should have" remanded a case to state court based on the lack of subject matter jurisdiction *sua sponte* even in the absence of a motion to remand).

Respectfully, Plaintiffs ask this Court to summarily remand this action to the Circuit Court of Johnson County, or in the alternative, shorten the briefing schedule on this motion pursuant to Fed. R. Civ. P. 6(c). Without an expeditious ruling on this motion before this case is transferred to

---

[1] For the reasons stated in Section II(B), *infra*, the Court lacks subject matter jurisdiction over this action.

the National Opiate Litigation MDL in the Northern District of Ohio, the adjudication of Plaintiffs'
claims would be indefinitely delayed.

An expedited resolution of the motion is particularly appropriate because Walmart presents
no valid basis for removal, as the same purported bases for federal jurisdiction have been rejected
by courts across the country. The "federal question" issue is not novel and is not in dispute.
Resolving the issues will not create any possibility of inconsistent determinations. Defendants fail
to cite a single decision adopting their tired "federal question" argument.[2] To the contrary, courts
have *unanimously* and *repeatedly* rejected the efforts by pharmaceutical manufacturers,
distributors, and national retail pharmacies to characterize state law claims related to the opioid
crisis as presenting a "federal question," and have remanded such actions back to state courts.[3]

---

[2] Walmart notes that there were cases that were filed originally in federal courts and transferred to
the MDL. However, this statement is irrelevant as Plaintiffs' case was filed in a state court,
and raises only state law claims. *See* Removal at 6, n. 5. Walmart also cites *Bowling Green-Warren
Cnty. Cmty. Hosp. Corp. v. Purdue Pharma L.P.*, 1:19-cv-00148 (W.D. Ky.), in which no ruling
on a motion to remand was ever entered. The existence of federal jurisdiction was never discussed
or decided by the district court in that case. Thus, the case cannot support any of Walmart's
arguments. The other authority cited by Walmart is also unpersuasive because it is essentially an
opinion on a motion to stay rather than a substantive discussion on the federal question jurisdiction
issue that is raised in this motion. *See* Removal at 6, n. 4.

[3] *See, e.g.*, *Lester E. Cox Med. Ctrs. v. Amneal Pharm., LLC*, No. 6:20-03152-CV-RK, 2020 WL
3171452, at *3 (W.D. Mo. June 15, 2020) (granting the hospital plaintiffs' motion to remand,
finding no federal question jurisdiction existed); *Fayetteville Ark. Hosp. Co., LLC v. Amneal
Pharm., LLC*, No. 5:20-cv-5036, 2020 WL 2521515, at *1 (W.D. Ark. May 18, 2020) (same); *Fla.
Health Scis. Ctr., Inc. v. Sackler*, No. 19-62992-CIV-MARTINEZ, 2020 WL 1046601, at *7 (S.D.
Fla. Jan. 24, 2020) (same); *DCH Health Care Auth. v. Purdue Pharma L.P.*, No. 9-0756-WS-C,
2019 WL 6493932, at *1 (S.D. Ala. Dec. 13, 2019) (same); *Kingman Hosp. Inc. v. Purdue Pharma
L.P.*, No. CV-19-08240-PCT-JJT, 2019 WL 4024773, at *2 (D. Ariz. Aug. 27, 2019) (granting the
hospital plaintiffs' emergency motion to remand without further response by defendants to the
motion, finding no federal question jurisdiction existed); *In Re: Nat'l Prescription Opiate Litig.*,
MDL No. 2804, Doc. No. 1987, at 3 (N.D. Ohio July 24, 2019) (remanding actions brought by
Jefferson County and Franklin County to a state court in Missouri, finding that "[t]here are no
federal causes of action, and the claim of federal jurisdiction by the removing Defendant is very
tenuous"); *Fire and Police Retiree Health Care Fund, San Antonio v. CVS Health Corp.*, No. 4:19-
cv-02089, Doc. No. 21 at 7 (S.D. Tex. July 24, 2019) (granting a motion to remand, finding no
federal question jurisdiction existed); *Cnty. of Kern v. Purdue Pharma L.P.*, No. 1:19cv-00557-

Given Walmart's knowledge of adverse decisions by numerous federal courts rejecting the "federal question" arguments in removal proceedings, the only possible reason for Walmart to remove this case was to delay the resolution of Plaintiffs' claims by orchestrating the transfer of the case into the MDL.

An expedited briefing schedule here is warranted, "because the right to litigate in the MDL depends on the existence of federal jurisdiction in the first place." *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. GLR-18-800, 2018 WL 1963816, at *3 (D. Md. Apr. 25, 2018) (citing Manual for Complex Litigation § 20.131 (4th ed. 2004)). "[I]f the federal court has no jurisdiction over a matter, then it can neither stay it nor transfer it to the MDL." *Craft v. United Ins. Co.*, No. Civ. A. 4:01CV339LN, 2002 WL 32509283, at *1 (S.D. Miss. 2002) (collecting

---

LJO-JLT, 2019 WL 3310668 (E.D. Cal. July 23, 2019) (same); *Mecklenburg Cnty. v. Purdue Pharma, L.P.,* No. 3:19-cv-463, 2019 WL 3207795 (E.D. Va. July 16, 2019) (same)*; Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 WL 3080929 (N.D. Ill. July 15, 2019) (same); *Dinwiddie Cnty. v. Purdue Pharma, L.P.,* No. 3:19-cv-242, 2019 WL 2518130 (E.D. Va. June 18, 2019) (same)*; City of El Monte v. Purdue Pharma L.P.*, No. 2:19-cv-03588-JFW-PLA, 2019 U.S. Dist. LEXIS 101868 (C.D. Cal. June 18, 2019) (same); *Dunaway v. Purdue Pharma, L.P.*, No. 2:19-cv-00038, 2019 WL 2211670 (M.D. Tenn. May 22, 2019) (same); *Cnty. Bd. of Arlington Cnty. v. Purdue Pharma, L.P.*, No. 1:19-cv-402, ECF No. 63 (E.D. Va. May 6, 2019) (same); *City of Boston v. Purdue Pharma L.P.*, No. 1:18-cv-12174, Doc. 32 (D. Mass. Jan. 29, 2019) (same); *Tucson Med. Ctr. v. Purdue Pharma*, No. CV-18-00532-TUC-RCC, 2018 WL 6629659 (D. Ariz. Dec. 19, 2018) (same); *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 28, 2018) (same); *In Re: Nat'l Prescription Opiate Litig.,* MDL No. 2804, Doc. No. 899 (N.D. Ohio Aug, 23, 2018) (same); *Cnty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18cv1947, 2018 WL 8800188, at *10 (D.S.C. Aug. 20, 2018) (same); *Weber Cnty. v. Purdue Pharma, L.P.*, No. 1:18-cv-00089-RJS, 2018 WL 3747846 (D. Utah Aug. 7, 2018) (same); *Uintah Cnty. v. Purdue Pharma, L.P.*, No. 2:18-cv-00585-RJS, 2018 WL 3747847 (D. Utah Aug. 7, 2018) (same); *City of Granite City, Ill. v. AmerisourceBergen Drug Corp.*, No. 18-CV-1367-SMY-DGW, 2018 WL 3408126 (S.D. Ill. July 13, 2018) (remanding the action, *sua sponte*, finding no federal question jurisdiction existed); *N.M. ex rel. Balderas v. Purdue Pharma, L.P.*, 323 F. Supp. 3d 1242 (D.N.M. 2018) (granting a motion to remand, finding no federal question jurisdiction existed); *Del. ex rel. Denn v. Purdue Pharma L.P.*, No. 1:18-383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018) (same); *W. Va. ex rel. Morrisey v. McKesson Corp.*, No. 16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2018) (same).

cases from Alabama, West Virginia, Pennsylvania, New Jersey, New York, California, and Wisconsin).

Even after motion practice concerning MDL transfer is pending before the JPML, this Court retains the authority[4] and responsibility to evaluate its subject matter jurisdiction. Its "first step should be to make a preliminary assessment of the jurisdictional issue," and, if this first step indicates that removal was improper, "then the court 'should promptly complete its consideration and remand the case to state court'" before the JPML makes a determination as to MDL transfer. *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 846 (S.D. Ill. 2006) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001)). The Court should follow the lead of those other federal district courts that have expeditiously remanded opioid-related actions before they can be transferred to the MDL Court. *See Mayor & City Council of Baltimore*, 2018 WL 1963816, at *3 (collecting cases).

Plaintiffs have a right to proceed in a timely manner on their claims and, equally important, to do so in a court that has subject matter jurisdiction. This case does not belong in federal court. Nor does the potential transfer to the MDL in any way preclude a ruling from this Court on the remand motion. If this Court does not act expeditiously, given that the MDL court has placed a

---

[4] This Court's ruling on Plaintiffs' Emergency Motion to Remand is in *no way* affected by the pendency of a motion for transfer to the MDL. Rule 2.1(d) of the Rules of the Judicial Panel on Multidistrict Litigation states: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend order and pretrial proceedings in the district court in which the action is pending and *does not in any way limit* the pretrial jurisdiction of that court. (emphasis added)" Accordingly, "[d]uring the pendency of a motion (or show cause order) for transfer, … the court in which the action was filed retains jurisdiction over the case." *See* Manual for Complex Litigation, Fourth, § 20.131 at 220 (citing J.P.M.L. R. P. 1.5; *In re Four Seasons Sec. Laws Litig.*, 362 F. Supp. 574 (J.P.M.L. 1973); *see also Wayman v. Southard*, 23 U.S. 1, 22 (1825) ("The judicial department is invested with jurisdiction in certain specified cases, in all which it has power to render judgment.").

moratorium on all motions to remand,[5] Defendants' delay strategy would work successfully to delay Plaintiffs' pursuit of justice. *See City of Worcester v. Purdue Pharma L.P.*, No. 4:18-11958-TSH, Doc. 36, at 4 (D. Mass. Nov. 21, 2018) ("Needlessly causing delays when there is clearly no jurisdiction would . . . constitute a travesty of justice."); *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 WL 3080929 (N.D. Ill. July 15, 2019) ("The Court is reticent to reward what may be a deliberate strategy of filing unmeritorious notices of removal in order to delay—or altogether avoid—litigating these cases.").

Plaintiffs therefore respectfully submit that the Court should expedite its consideration of remand to avoid rewarding Defendants' stall tactics.

> **B.    There Is No Federal Subject Matter Jurisdiction and This Action Must Be Remanded.**
>
> > **1.    The Removal Statute Must be Strictly Construed and All Doubts Should be Resolved Against Removal.**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The Sixth Circuit recognized the restriction on "federal judicial power" and ruled that "there is a presumption against federal jurisdiction." *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 391 (6th Cir. 2016). As such, the removing defendants "bear the burden of establishing federal court jurisdiction." *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017). When ambiguities arise in determining whether federal jurisdiction is established, "all doubts should be resolved against removal." *Mays*, 871 F.3d at 442 (citing *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)). *See also Coyne v. Am. Tobacco Co.*,

---

[5] *See* Order Regarding Remands, *In re: Nat'l Prescription Opiate Litigation*, No. 17-md-2804, Doc. No. 130 (N.D. Ohio Feb. 16, 2018).

183 F.3d 488, 493 (6th Cir. 1999) ("All doubts as to the propriety of removal are resolved in favor of remand.").[6]

### 2. There is no Federal Question Jurisdiction Presented in This Action.

#### a) There Are No Federal Claims on The Face of The Complaint

["F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). *See also Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (same). "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 116 (1936).

Plaintiffs' claims and allegations contained within its Complaint are *all* founded upon state law, in this instance, the laws of Kentucky:

- Claim I is a cause of action for violation of Kentucky's Consumer Protection Act, KRS 367.120;
- Claim II is a cause of action for negligence under Kentucky common law;
- Claim III is a cause of action for nuisance under Kentucky common law;

---

[6] Walmart argues for the opposite position against all of the authorities that are cited here. However, there is no authority from this district or within the Sixth Circuit that can support the proposition that "Walmart need not overcome any artificial presumptions against removal or in favor of remand." Removal at 10, n.6. The cases cited by Walmart did not even discuss whether defendants bear the burden to establish that the removal is proper, thus, could not and did not support their argument. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 693 (2003) (the Supreme Court discussed the issue of "whether the provision of the Fair Labor Standards Act of 1938 (FLSA or Act) . . . bars removal of a suit from state to federal court"); *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 370 (2012) (the Supreme Court discussed the issue of "whether Congress' provision for private actions to enforce the TCPA renders state courts the exclusive arbiters of such actions" and held, "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA"). Moreover, the exact same argument has been flatly rejected. *See DCH Health Care Auth.*, 2019 WL 6493932, at *1 ("[defendant] suggests the burden is actually on the plaintiff to show the absence of federal jurisdiction, [citation omitted], but it misreads *Breuer v. Jim's Concrete, Inc.*, 538 U.S. 691 (2003). . . . *Breuer* holds only that, pursuant to this statutory language, [']whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception.['] 538 U.S. at 698. The burden on the plaintiff, then, is only a burden to find an exception to removal, and that burden arises only after subject matter jurisdiction has been demonstrated by the removing defendant.").

- Claim IV is a cause of action for unjust enrichment under Kentucky common law;
- Claim V is a cause of action for fraud and deceit under Kentucky common law;
- Claim VI is a cause of action for civil conspiracy under Kentucky common law;
- Claim VII is a cause of action for fraudulent concealment under Kentucky common law.

The "well-pleaded complaint rule" requires that the Court reads Plaintiffs' claims as they appear in Plaintiffs' own statements in the complaint in determining whether the claims arose under any federal law. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 830 (2002) (citation omitted). As Walmart concedes, Plaintiffs plead *solely* Kentucky state law claims. Thus, the "well-pleaded complaint rule" provides no ground for removal. Even if there were any statement in the pleading that raised "any doubts regarding jurisdiction," they should be resolved "in favor of remand." *Orbitz, LLC v. Worldspan, L.P.,* 425 F.Supp.2d 929, 931 (N.D. Ill. 2006) (citing *Doe v. Allied-Signal*, 985 F.2d 908, 911 (7th Cir. 1993)).

Because Plaintiffs do not seek relief under any federal law, no federal question is raised and no federal question jurisdiction exists.

### b)      Defendants Fail to Establish Federal Question Jurisdiction

The Supreme Court has made it clear that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," and such jurisdiction will only lie in a very narrow category of cases which necessarily rest on a "substantial federal question." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). *Accord Gunn v. Minton*, 568 U.S. 251, 258-60 (2013). District courts therefore must exercise "prudence and restraint" when determining whether a state cause of action presents a substantial federal question because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810.

Justice Robert's opinion in *Gunn v. Minton*, 568 U.S. 251 (2013) instructs that a case arises under federal law when federal law creates the claim asserted and that this accounts for almost all suits under federal law with only a few extremely rare exceptions. 568 U.S. 251, 1064. In *Gunn* the plaintiff based his legal malpractice case on an error made by his lawyer in applying the federal patent act which expressly provides for federal jurisdiction and eliminates state jurisdiction. The Supreme Court acknowledged that a resolution of the federal patent law was necessary to the plaintiff's case. But this did not create federal subject matter jurisdiction for the malpractice claim. There was no substantial federal question because the issue was not important to the federal system as a whole but was only significant to the particular parties to the action. 561 U.S. 251, 1066. Likewise, this action does not fall within one of the extremely rare exceptions and Gunn compels a remand.

The basis for Walmart's contention here is the scant references to federal statutes in the Complaint. Walmart further argues that Defendants' duties arise *solely* under the Federal Controlled Substances Act ("FCSA") and its implementing regulations. As such, Walmart argues that this Court has jurisdiction because "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Removal at ¶ 40 (citing *Gunn*, 568 U.S. at 258). But Walmart's transmutation of plaintiff's complaint is a baseless fiction and there is no substantial federal question as only the interests of the parties are at stake and no matter how resolved it does not affect the Federal Controlled Substances Act.

Moreover, Walmart's meritless arguments have been *expressly* and *repeatedly* rejected by other courts.[7] Thus far, courts, including the MDL court, have *repeatedly* rejected the efforts by

---

[7] *See supra* n.3.

pharmaceutical manufacturers, distributors and national retail pharmacies to characterize state law claims related to the opioid crisis as presenting a "federal question," and have remanded such actions back to state courts. *See*, *e.g.*, *Lester E. Cox Med. Cntrs.*, 2020 WL 3171452, at *2 ("A state claim that incorporates a violation of federal law is insufficient to demonstrate the federal issue is "substantial."); *Fayetteville Ark. Hosp. Co., LLC*, 2020 WL 2521515, at *2 ("Looking at the complaint as pleaded, however, the Court cannot conclude that the CSA is necessarily raised nor substantially implicated by the pleadings. Plaintiffs have relied on state statutory and common law theories for each of their claims."); *Fla. Health Scis. Ctr., Inc.*, 2020 WL 1046601, at *4 (finding that *"*the CSA does not confer federal subject matter jurisdiction for removal"); *DCH Health Care Auth.*, 2019 WL 6493932, at *3 (finding that "references to the CSA "does not of itself establish that the complaint [']necessarily raise[s]['] a federal issue."); *In Re: Nat'l Prescription Opiate Litig.*, MDL No. 2804, Doc. No. 1987 at 3 (finding that "[t]here are no federal causes of action, and the claim of federal jurisdiction by the removing Defendant is very tenuous"); *In Re: Nat'l Prescription Opiate Litig.*, Doc. No. 899, at 6 (remanding action to a state court in Montana, finding no federal issue was raised by the plaintiff's complaint); *Tucson Med. Ctr.*, 2018 WL 6629659, at *3 ("AmerisourceBergen has failed to show that the Plaintiff must prove a violation of federal law in order to prevail on its claims. Under the *Gunn* framework, this is cause enough to order a remand."); *Kingman Hosp. Inc.*, 2019 WL 4024773, at *3 (finding that "to the extent the Complaint raises any question under the Controlled Substances Act, the question is not substantial, resolution of the question is not essential for Plaintiffs to succeed, and the Controlled Substances Act does not provide for a private right of action, indicating that Congress did not intend that federal courts would exercise federal question jurisdiction and provide remedies under the statute."); *Cnty. of Kern*, 2019 WL 3310668, at *3 ("In short, Plaintiffs do not plead any federal

causes of action on the face of their complaint. Their claims do not necessarily raise a federal issue because the claims' validity does not depend on questions of federal law."); *Mecklenburg Cnty.*, 2019 WL 3207795, at *6 ("As a preliminary matter, every Count of the Complaint is a state law claim either under a [state] statute or [state] common law. . . . no claims depend exclusively (or even primarily) on their duty under federal law. Instead, each claim could go forward even without a reference to federal law. Accordingly, the Court does not have federal question jurisdiction over the claims."); *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2 ("As many other courts have found in similar cases concerning the manufacture and distribution of opioids, these alleged state-law duties mean that the construction of the Controlled Substances Act is not a necessary part of the plaintiff's claims."); *City of Granite City, Ill.*, 2018 WL 3408126, at *2 ("While the Complaint references some duties or requirements that may also exist under the CSA, those references alone are insufficient to create federal question jurisdiction."); *City of Worcester*, Doc. 36, at 8 ("Because Plaintiff is not required to prove Defendants violated federal law to prevail, a federal question is not necessarily presented. Therefore, this Court does not have federal question jurisdiction"); *Weber Cnty.*, 2018 WL 3747846, at *5 (finding that the plaintiff "asserts only state law claims, and provides bases for the claims which do not arise out of or necessarily depend on an interpretation of a disputed CSA provision" and thus "the Complaint does not necessarily raise federal issues").

In every one of these cases, the defendants contended that the state law claims necessarily presented a substantial federal issue because the claims arose under the CSA or otherwise necessarily were based, somehow, on the federal regulatory scheme pertaining to pharmaceutical products. In every one of these cases, the defendants lost. Yet, they persist in removing cases in which similar state law claims are asserted. For instance, in *City of Granite City, Illinois. v.*

*AmerisourceBergen Drug Corp.*, defendants had removed the case based on federal question. The district court remanded the action to state court, *sua sponte*, without awaiting a formal motion to remand. *See* 2018 WL 3408126, at *2 (finding that "this case as pleaded raises garden-variety state law tort claims"). In *Dunaway*, 2019 WL 2211670, at **4-7 (M.D. Tenn. May 22, 2019), the defendants argued, as they do here, that "the state-law grounds for finding liability under the [state statutes] are insufficient because none of the cited provisions specifically includes a duty to report and refuse to fill [']suspicious orders[.]" *Id.* at *7. That argument was rejected. *See id.* ("The precise boundaries of the cited [state] law, however, present an issue of merits, not jurisdiction.") (citation omitted). Further, the court emphasized that "[n]umerous other opioid-related cases involving purely state-law prohibitions have been remanded," and more importantly, that "the fact that opioid abuse is an issue of national importance that is addressed, to some degree, by federal law in no way undermines the power of states to craft independent responses that do not rely on federal law to impose liability." *Id.* (citing decisions by district courts in Ohio, West Virginia, Nevada, Delaware, Utah and New Mexico). In *DCH Health Care Authority v. Purdue Pharma L.P.*, the defendants argued, as they do here, that "[state law] imposes no duty other than to follow federal law, such that federal law remains the exclusive source of duty." 2019 WL 6493932, at *3. That argument was also rejected. *See id.* at *4 ("[S]ince [Defendant] does not explain how the content of any state statutory or regulatory duty to report and stop suspicious orders must perforce be supplied by federal law, the Court will not indulge any such assumption."). Similarly, the Court should reject all of Walmart's arguments here.

Defendants' attempts to remove cases brought by hospitals in state courts on an alleged "federal question jurisdiction" basis have failed *repeatedly*. For instances, in six recent actions brought by hospitals against a similar group of opioid defendants, the same lines of arguments

have been repeated, and flatly rejected. *See Lester E. Cox Med. Ctrs.*, 2020 WL 3171452, at **1-3 (rejecting the argument that "Plaintiffs' complaint raises a substantial issue of federal law" and finding that "Plaintiffs' state-law claims do not fall within the ['[']special and small category['] of state claims that can be deemed to arise under federal law"); *Fayetteville Ark. Hosp. Co., LLC*, 2020 WL 2521515, at *2 (rejecting the argument that "Plaintiffs' allegations that Defendants failed to report and halt suspicious orders [relied] on duties that only arise out of the CSA and related federal regulations and agency guidance"); *Fla. Health Scis. Ctr., Inc.*, 2020 WL 1046601, at *3 (rejecting the argument that "despite the explicit duties under [state] law listed in the Complaint, it is really the violation of the federally imposed duties under the CSA that give rise to Plaintiffs' asserted causes of action"); *DCH Health Care Auth.*, 2019 WL 6493932, at *5 (rejecting the argument that "a federal issue is necessarily raised because the complaint ['[']implicates the actions of['] the Drug Enforcement Agency ("DEA") and because it ['[']amounts to a collateral attack on an entire [federal] regulatory scheme.['[']"); *Tucson Med. Ctr.*, 2018 WL 6629659, at *1 (rejecting the argument that "state law claims necessarily raise federal questions under 21 U.S.C. §§ 801, the Controlled Substances Act ("CSA")."); *Kingman Hosp. Inc.*, 2019 WL 4024773, at *2 (rejecting the argument that "Plaintiffs' ['[']right to relief necessarily depends on resolution of a substantial question of federal law['[']—namely, responsibilities under the Controlled Substances Act."). The same conclusion applies here. Walmart provides no reason for the Court to find otherwise. And, none of the Gunn elements for removal are met in Plaintiffs' case. As shown above, courts around the country have found that similar allegations of state law claims do not "necessarily" raise any federal question.

Specifically, the Complaint here implicates numerous statutory and common law duties arising under state law.[8] The Complaint, like others asserted against the defendants elsewhere,

---

[8] *See, e.g.*, Compl. ¶ 578 ("Each Defendant was required to register with the Commonwealth of Kentucky. 201 KAR 2:320, 2:105; KRS § 315.005"); *See also* Compl.¶ 796 ("The marketing and Supply Chain Defendants' conduct, in violation of Kentucky statutes and regulations (including KRS § 315.005, KRS § 218A.200, and KRS § 218A.1404(3) in failing to maintain effective controls against the diversion of opioids into other than legitimate medical channels. Defendants also violated state law, including KRS § 218A.202, in failing to operate a system to stop orders which is flagged or should have been flagged as suspicious."); Compl.¶ 797 ("A manufacturer or wholesaler/distributor of prescription drugs must obtain a license from Kentucky Board of Pharmacy and "shall keep records of all controlled substances compounded, mixed, cultivated, grown, or by any other process produced or prepared drugs, and of all controlled substances received and disposed of by them," among other requirements by the Board. KRS § 218A.200(2). Kentucky state law also requires that a "manufacturer, distributor, or wholesaler" must comply with "KRS § 218A.200 and the federal controlled substances laws." KRS § 218A.170. "No person shall dispense, prescribe, distribute, or administer any controlled substance except as authorized by law." KRS § 218A.1404(2). Defendants have a duty to comply with the law"); Compl.¶ 798 ("Each Defendant's actions were in violation of Chapter 218A of the Kentucky Revised Statutes, as set out above, and also including KRS § 218A.1404(3), which forbids unlawful distribution of controlled substances; § 218A.1404(1), which forbids the trafficking of controlled substances; and, KRS § 506.040 and § 218A.1402, which forbid criminal drug conspiracies; and KRS § 218A.1405, which forbids receipt of income from trafficking and utilizing that income to operate a commercial enterprise"); Compl.¶ 402 ("Pursuant to KRS § 218A.170(8), Defendants must adhere to Kentucky's controlled substances law in the sale of controlled substances. See KRS § 218A.170(8) ("All sales and distributions shall be in accordance with KRS § 218A.200 and the federal controlled substances laws, including the requirements governing the use of order forms."). Thus, all Defendants have a duty to report suspicious orders in order to prevent diversion.291 Pharmacies are required to ensure that opioid prescriptions they fill are written for a legitimate patient for a legitimate medical need. *See* KRS § 218A.180(3)(a) ("[T]o be valid, a prescription for a controlled substance shall be issued only for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice[.]")"); Compl.¶ 403 ("Further, "[m]anufacturers and wholesalers shall keep records of all controlled substances compounded, mixed, cultivated, grown, or by any other process produced or prepared, and of all controlled substances received and disposed of by them." KRS § 218A.200(2). "The record of controlled substances received shall in every case show the date of receipt, the name and address of the person from whom received, and the kind and quantity of drugs received. The record of all controlled substances sold, administered, dispensed, or otherwise disposed of, shall show the date of selling, administering, or dispensing, the name and address of the person to whom, or for whose use, or the owner and species of animal for which the drugs were sold, administered, or dispensed, and the kind and quantity" KRS § 218A.200(4).")"); Compl.¶ 775 ("Defendants engaged in deception, deceptive or unfair acts or practices, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of prescription drugs in violation of the

cannot be plausibly construed as asserting claims that necessarily require resolution of substantial federal questions because it invokes many duties and requirements arising under state law. For instance, the Complaint alleges, among others, "Defendants have willfully turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to retailers and dispensers who are serving a customer base substantially comprised of individuals who are abusing and/or diverting prescription medications, many of whom are addicted and all of whom can reasonably be expected to become addicted. Defendants negligently acted with others by dispensing controlled substances for illegitimate medical purposes, operating bogus pain clinics which do little more than provide prescriptions for controlled substances, thereby creating and continuing addictions to prescription medications in this state." Compl. ¶ 803. "Defendants violated their duty not to actively deceive by intentionally and unlawfully making knowingly false representations, intending that the representations be relied upon, and by intentionally and unlawfully omitting and/or concealing information." Compl. ¶ 845. As the court found in *Delaware ex rel. Denn*, "[a]lthough the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards that arise solely under state statutory or common law," and thus "it is possible for the state law claims to be resolved solely under state law." 2018 WL 1942363, at *2. *See also Lee v. Kirkpatrick*, No. 1:16-CV-00123-GNS, 2016 WL 7197478, at *5 (W.D. Ky. Dec. 9, 2016) (finding no federal jurisdiction existed when "[t]he resolution of the issues presented in this case can be resolved solely under state tort law").

---

KCPA, KRS § 367.170(1)"); Compl.¶ 870 ("Defendants engaged in one or more unlawful activities to further the conspiracy. The objects of the conspiracy were nuisance, negligence, fraud, misrepresentation, violation of the KCPA, and other unlawful conduct as described above in this Complaint. Defendants knew that these objects were unlawful and would be accomplished by unlawful means such as fraud, misrepresentations, and omissions").

Thus, Walmart's argument that "the Complaint necessarily raises a federal issue" is incorrect and must be rejected. Removal at ¶ 47.

Further, Walmart fails to establish that any "federal interest" in this case is "substantial." "[T]he fact that Congress chose not to create a federal cause of action under the relevant statute is evidence that the federal interest is insufficiently substantial." *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2 (citing *Merrell Dow*, 478 U.S. at 814). "When we conclude that Congress has decided not to provide a particular federal remedy, we are not free to ['supplement['] that decision in a way that makes it ['meaningless.[']" *Merrell Dow*, 478 U.S. at 812 n.10. More importantly, when a claim may be supported by a federal law theory but also an alternative theory which would *not* require resolution of "substantial federal questions," federal jurisdiction does not exist. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) (finding that if a claim is supported not only by a theory establishing federal subject matter jurisdiction but *also* by an alternative theory which would *not* establish such jurisdiction, then federal subject matter jurisdiction *does not exist*).

Walmart suggests that because certain of the Kentucky statutes cited in the Complaint incorporate federal standards, that somehow creates a federal question. Removal at ¶37.[9] This is simply wrong. Mere references to federal laws and regulations "do [] not operate to unlock the federal courts." *W. Va. ex rel. Morrisey*, 2017 WL 357307, at *8. *Accord Eastman v. Marine Mechanical Corp.,* 438 F.3d 544, 553 (6th Cir. 2006) (concluding that "reference in the plaintiff's

---

[9] Further, nowhere in the Complaint do Plaintiffs "attempt to enforce the CSA." Removal at ¶ 52. To be clear, Plaintiffs allege that "Defendants have contributed substantially to the opioid crisis by selling and distributing far greater quantities of opioids than they know should be necessary for legitimate medical uses, while failing to report, and take steps to halt, suspicious orders when they were identified, thereby exacerbating the oversupply of such drugs and fueling an illegal secondary market." Compl. ¶ 76. No claim in this action arises under federal law or attempts to enforce the FCSA.

complaint to the federal statutes cited as a source of public policy does not create a substantial federal question"). As a court in the Western District found in *Kentucky ex rel. Conway v. Daymar Learning, Inc.*, "although the Court may need to refer to the [federal statute] and its regulations in examining the KCPA claims, this does not mean the [federal statute] or its regulations are an essential element of Plaintiff's claims." No. 4:11CV-00103-JHM, 2012 WL 1014989, at *4 (W.D. Ky. Mar. 22, 2012) (citation omitted). *See also Ky. ex rel. Gorman v. Comcast Cable of Paducah, Inc.*, 881 F.Supp. 285, 288 (W.D. Ky. 1995) (finding that "the reference to a [']violation['] of the federal statute in the state law claim can only be considered to be an assertion that the failure to conform with the federal rule is evidence that the state consumer protection law has been violated. The use of the federal regulation as a standard in a state law claim is not unusual."). Similarly, the mere references to federal laws and regulations in the Complaint does not create a "substantial" federal question. In fact, the Supreme Court in *Merrell Dow* flatly rejected the suggestion (that had previously gained traction in some courts) that "where a state law incorporates federal law as the applicable state standard . . . this is enough to create federal-question jurisdiction." *Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 89 (5th Cir. 1986) (citing *Merrell Dow*, 478 U.S. at 817).

Even if one or more of Plaintiffs' state law claims were premised *in part* on violations of federal law, that, by itself would not be "substantial" enough to invoke federal jurisdiction. *See N.M. ex rel. Balderas*, 323 F. Supp. 3d at 1252 ("Even if there was a violation of the [CSA], its promulgated rules, and the DEA's interpretation of the statute, no large-scale federal interests of the kind in *Grable*—the tax code—are implicated by such a violation."); *Del. ex rel. Denn,* 2018 WL 1942363, at *4 (finding that "whether Defendants violated the FCSA is not substantial to the government as a whole. Most importantly, the parties do not seek to interpret the FCSA such that it affects the manner in which the government operates[]"). *See also, In Re: Nat'l Prescription*

*Opiate Litig.*, MDL No. 2804, Doc. No. 899, at 5-6 (N.D. Ohio Aug, 23, 2018) (finding that "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction. . . . [Plaintiff] does not assert that [Defendant]'s drug labels violate the [federal statute]. However, even if they had, *Merrell Dow* instructs that this would still not be substantial enough to warrant federal question jurisdiction. Thus, as all doubts about removal should be resolved in favor of remand, the Court finds that remand in this case is proper.") (quoting *Merrell Dow Pharm.*, 478 U.S. at 814). In *Grable & Sons Metal Prods., Inc.*, the Supreme Court reiterated the conclusion and stated that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, *so could any other federal standard without a federal cause of action.*" 545 U.S. 308, 318 (2005) (emphasis added). In any event, a state court "is competent to apply federal law, to the extent it is relevant," particularly, when as here, the claims pleaded are governed by state law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 681 (2006).

In sum, the Circuit Court of Johnson County need not "necessarily" resolve any "substantial" federal question to adjudicate Plaintiffs' claims, much less one that would rise to the level of significant public importance "substantial to the federal system as a whole" as defined in *Gunn.*

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully pray that, pursuant to 28 U.S.C. § 1447(c), this action be promptly remanded to the Circuit Court of Johnson County, Kentucky. Plaintiffs further request that the Court to set an expedited briefing schedule for this motion.

Dated: July 30, 2020.                    Respectfully Submitted,

                                         /s/ Joseph M. Kramer
                                         Richard G. Meyer (#47554)
                                         Mathew R. Klein (#84695)
                                         Mark D. Guilfoyle (#27625)
                                         Joseph M. Kramer (#97505)
                                         **DRESSMAN BENZINGER LAVELLE PSC**
                                         207 Thomas More Parkway
                                         Crestview Hills, KY 41017
                                         Tel: (859) 341-1881
                                         rmeyer@dbllaw.com
                                         mklein@dbllaw.com
                                         mguilfoyle@dbllaw.com
                                         jkramer@dbllaw.com

                                         Kent Wicker (#82926)
                                         Mitchel. T. Denham (#89815)
                                         **DRESSMAN BENZINGER LAVELLE PSC**
                                         321 W. Main Street, #2100
                                         Louisville, KY 40202
                                         Tel: (502) 572-2500
                                         kwicker@dbllaw.com
                                         mdenham@dbllaw.com

                                         John W. ("Don") Barrett
                                         Sterling Starns
                                         David McMullan, Jr.
                                         Richard Barrett
                                         **BARRETT LAW GROUP, P.A.**
                                         P.O. Box 927
                                         404 Court Square North
                                         Lexington, MS 39095
                                         Tel: (662) 834-2488

                                         Warren Burns
                                         **BURNS CHAREST, LLP**
                                         900 Jackson St., Suite 500
                                         Dallas, Texas 75202
                                         Tel: (469) 904-4550

19

Korey A. Nelson
Lydia A. Wright
Rick Yelton
**BURNS CHAREST, LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Tel: (504) 799-2845

Jonathan W. Cuneo
Monica Miller
Mark H. Dubester
David L. Black
Jennifer E. Kelly
Evelyn Li
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202)789-3960

Steve Martino
**TAYLOR MARTINO, P.C.**
51 St. Joseph St.
Mobile, AL 36602
Tel: (251) 433-3131

Gerald M. Abdalla, Jr.
**ABDALLA LAW, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Tel: (601) 487-4590

Robert C. King
**THE KING LAW FIRM, P.C.**
36 West Claiborne St.
Monroeville, AL 36460
Tel: (251) 575-3434

*Attorneys for All Plaintiffs*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 30th day of July 2020, I caused the foregoing document to be filed with the Clerk of this Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

<div style="margin-left:40%">

*/s/ Joseph M. Kramer*
Joseph M. Kramer (#97505)
**DRESSMAN BENZINGER LAVELLE PSC**
207 Thomas More Parkway
Crestview Hills, KY 41017
(859) 341-1881
mklein@dbllaw.com

</div>

901026.1