UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| PAINTSVILLE HOSPITAL COMPANY, LLC, *et al.* | ) ) ) | |
| | ) | Civil. No. 7:20-cv-00102-GFVT |
| Plaintiffs, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** **&** |
| AMNEAL PHARMACEUTICALS, LLC, *et al.*, | ) ) ) | **ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on two pending motions: Plaintiffs' Motion to Remand [R. 8] and Defendant Wal-Mart Inc.'s ("Wal Mart") Motion to Stay further proceedings pending a ruling by the Judicial Panel on Multidistrict Litigation (JPML) concerning the transfer of these actions to a consolidated Multidistrict Litigation (MDL) case, *In re: National Prescription Opiate Litigation*, MDL No. 2804. [R. 10.] For the reasons explained below, Defendant Wal-Mart Inc.'s Motion to Stay will be **GRANTED**.

**I**

This case is related to hundreds of other lawsuits that have been filed throughout the country in recent years. In these lawsuits, plaintiffs typically allege that certain defendants misrepresented the safety and the addictive properties of prescription opioids, failed to comply with relevant legal standards and requirements, and engaged in deceptive conduct that resulted in prescription opioids being over-distributed and over-prescribed. On December 5, 2017, the JPML determined that a large number of cases related to these allegations should be centralized

for pretrial proceedings and formed MDL 2804 in the Northern District of Ohio to coordinate the resolution of these actions.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (JPML 2017).  Since that time, well over 2,000 cases have been transferred to the MDL Court.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4686815, at *1 (N.D. Ohio Sept. 26, 2019).

This case was originally filed by Plaintiffs in Johnson Circuit Court on June 8, 2020.  [R. 1-2 at 11.]  Defendant Wal-Mart Inc. subsequently removed to federal court, asserting that "Plaintiffs' claims arise under federal law and effectively allege that Walmart and certain other Defendants violated and are liable under. . . the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, (the "CSA") and its implementing regulations."  [R. 1 at 3.]  The JPML then issued a Conditional Transfer Order identifying the present case as "involv[ing] questions of fact that are common to the actions previously transferred to" the MDL Court. [R. 1-5.]  Following removal and pending the final determination by the JPML of whether this case should be consolidated, multiple motions have been filed which now require the Court's attention.

On July 30, 2020, Plaintiffs filed a Motion to Remand back to state court.  [R. 8.]  Defendant Wal-Mart Inc. filed a response in opposition to Plaintiffs' Motion to Remand and has now also moved to stay further proceedings pending the imminent determination by the JPML.  [R. 12; R. 10.]  These motions have now been fully briefed, the Court has considered the arguments of the parties and applicable law, and this Opinion is the result.

**II**

The Court will address Plaintiffs' Motion to Remand and Defendant Wal-Mart Inc.'s competing Motion to Stay pending potential transfer to the MDL simultaneously.  [R. 8; R. 10.]  Wal-Mart wishes to stay all proceedings, including the remand motion, until the JPML finally

resolves the transfer issue.  [R. 10 at 1.]  On the other hand, Plaintiffs argue this Court should remand before the JPML concludes that process.  [R. 8-1 at 2; R. 12 at 4.]

The decision whether to grant a stay is discretionary because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.); *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1047 (E.D. Wis. 2001) (quoting *Landis*, 299 U.S. at 254, as support for the district court's power to stay a case pending transfer by the JPML).  As relevant in the present context, the Manual for Complex Litigation notes that a "stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well."  Manual for Complex Litigation (4th ed.) § 22.35 (2005).  Further, 28 U.S.C. § 1407 specifically authorizes the JPML to transfer cases even when there is a motion to remand pending in the district court, although the JPML's consideration of transfer does not deprive the district court of its own inherent authority to rule on the remand motion itself.  *See* Judicial Panel on Multidistrict Litigation, Rule 2.1(d).  Therefore, this Court has the power to resolve the instant motions despite the ongoing JPML process.

In making this determination, the Court notes that some courts choose to rule on pending motions to remand before the JPML decides to transfer the case, while many other courts decide to issue a stay pending the JPML's decision even when a motion to remand is also pending. *Compare, e.g.*, *Kantner v. Merck & Co.*, 2005 WL 277688 (S.D. Ind. Jan. 26, 2005) (ruling on remand motion before any potential transfer by JPML); *with Benge v. Eli Lilly & Co.*, 553 F. Supp. 2d 1049 (N.D. Ind. 2008) (staying all proceedings pending final resolution by JPML

concerning transfer); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 43 (D.D.C. 1999) (same); *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997) (same). Indeed, as briefed at length by the parties, in many cases related to the litigation at hand courts have also issued stays while others have chosen to remand the case before the question of transfer is fully resolved. [*See* R. 10 at 2, n. 2 (citing multiple cases in Kentucky which were ultimately transferred to a JPML); R. 8-1 at 3, n. 3 (citing and discussing several cases related to the instant litigation where district courts remanded actions during the pendency of conditional transfer orders).] Invariably, however, courts consider the interests of judicial economy and potential prejudice or hardship to the parties—an inquiry which is necessarily specific to the individual facts and procedural posture of each case, and which is likely the main cause for the apparent divergence of approaches.

In considering the present cases, the Court finds persuasive the extensive and thoughtful explanation behind the approach adopted in *Meyers v. Bayer AG*. 143 F. Supp. 2d at 1049. In that case, the court employed an approach by which the district court makes a preliminary assessment of jurisdiction, and if, upon such assessment, jurisdiction is clearly improper, "the court should promptly complete its consideration and remand the case to state court." *Id.* If jurisdiction is not clearly improper, the district court is then to turn to additional considerations in making its stay determination. *Id.* Although not binding, this reasoned approach also seems consistent with guidance concerning the MDL process in general, which provides that a primary reason for denying a stay pending the panel's decision on transfer is when federal jurisdiction is clearly absent. Manual for Complex Litigation (4th ed.) § 22.35.

In light of the JPML's pending decision concerning the previously issued conditional transfer order, the appropriate inquiry here is not necessarily the eventual possibility that these

cases *could* be remanded to state court, but rather whether there is any reasonable possibility that federal jurisdiction exists.  Stated otherwise, this Court will inquire as to whether federal jurisdiction is *clearly* absent.  Manual for Complex Litigation (4th ed.) § 22.35; *see also Meyers*, 143 F. Supp. 2d at 1047–52.  This preliminary assessment of jurisdiction is critical because, after all, the jurisdictional question is about the Court's very power to decide the case.  If federal jurisdiction is clearly absent, then the court should complete its consideration and remand the case to state court.  *Meyers*, F. Supp. 2d at 1049.  If, however, "the jurisdictional issue appears factually or legally difficult," the court should "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id.*  If so, the court should proceed to the third step of weighing the relevant factors to be considered in determining whether to grant the motion to stay. *Id.*  Thus, the Court first will assess the clarity of federal jurisdiction and resolve the present motion to stay accordingly.

**B**

**1**

A preliminary assessment of jurisdiction does not reveal that federal jurisdiction is clearly absent.  As its basis for removal, Defendants reference *Gunn v. Minton*, in which the Supreme Court ruled that federal jurisdiction over a dispute is proper if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  [558 U.S. 251, 258 (2013); R. 13 at 9.]  Defendants argue that, although Plaintiffs only allege state law claims, their claims raise a substantial issue of federal law.  [R. 13 at 9-15.]  Specifically, Defendants argue that Plaintiffs claims are designed to mask the necessary implications of the Controlled Substances Act and its

implementing regulations. [R. 13 at 11-15.] Plaintiffs, on the other hand, allege that, because they have not explicitly stated a federal claim and because diversity between the parties does not exist, removal was improper. [R. 18.] Plaintiffs characterize Wal-Mart's removal as a "delay strategy to . . . delay Plaintiffs' pursuit of justice" and deny that the Controlled Substances Act impacts their claims. [R.8-1 at 6; R. 18 at 5.] Additionally, Plaintiffs point to several non-binding decisions in which district courts have rejected Defendants' CSA theory,[1] while Defendants reference this Court's previous decisions granting Motions to Stay under similar factual scenarios.[2] [R. 8-1 at 3-4; R. 13 at 2.]

The jurisdictional issues present in the briefing involve colorable arguments on each side. Although the Court takes notice that the pathway to federal jurisdiction through the substantial federal issue doctrine is limited, the Defendants reasonably argue that the doctrine applies in this case by alleging that Plaintiffs' underlying theory of liability is based on legal duties arising under the federal Controlled Substances Act, 21 U.S.C. § 1331. [R. 13 at 8-13.] In addition, this issue is similar to jurisdictional issues that the MDL court has before it already or is likely to encounter. [*See* R. 13 at 13 n. 4 (citing numerous cases which have already been transferred to the MDL from Kentucky.).] Although Plaintiffs make strong arguments in opposition that will need to be analyzed more thoroughly at a later stage, *Meyers* tasks this court only with making a preliminary assessment of jurisdiction. 143 F. Supp. 2d at 1047–52. Here, the preliminary assessment of jurisdiction does not indicate that federal question jurisdiction is clearly absent.

---

[1] *See, e.g., Lester E. Cox Med. Ctrs v. Amneal Pharm., LLC*, No. 6:20-03152-cv-RK, 2020 WL 3141452, at *3 (W.D. Mo. June 15, 2020); *Fayetteville Ark. Hosp. Co., LLC v. Amneal Pharm., LLC,* No. 5:20-cv-5036, 2020 WL 2521515, at *1 (W.D. Ark. May 18, 2020).
[2] *See* Stay Order, *City of Henderson, Kentucky v. Purdue Pharma L.P.,* No. 3:19-cv-00067 (E.D. Ky.) (J. Van Tatenhove) and *Hardin Cty. Fiscal Court v. Purdue Pharma L.P.,* No. 3:19-cv-00068 (E.D. Ky.) (J. Van Tatenhove).

**2**

Finally, because "the jurisdictional analysis is both difficult and common," the Court next considers the propriety of a stay. *Meyers*, 143 F. Supp. 2d at 1053. Here, the Court is to weigh the following factors: "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Id.* (citing *Rivers*, 980 F. Supp. at 1360). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." *Rivers*, 980 F. Supp. at 1360.

Here, the sheer number of related cases, many of which also involve the same jurisdictional issues, weighs in favor of a stay in the interests of judicial economy. *See Meyers*, 143 F. Supp. 2d at 1053. A stay pending the JPML's decision can increase efficiency and consistency particularly "when the pending motions raise issues likely to be raised in other cases as well." Manual for Complex Litigation (4th ed.) § 22.35. As such, "judicial economy is served by a stay pending transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL transferee court." *Fox v. DePuy Orthopaedics, Inc.*, 2011 WL 6057509, *1 (W.D. Ky. Dec. 6, 2011) (quoting *Ayers v. ConAgra Foods, Inc.*, 2009 WL 982472, *1 (S.D. Tex. April 9, 2009). The similarity between this case and others is underscored by the JPML's recognition of the existence of common questions of fact. *See* 28 U.S.C. § 1407(a). Perhaps most convincingly on this "similarity factor," specifically as it relates to those claims brought under Kentucky law, the Court notes the twenty-plus cases that were originally brought by similarly-situated Kentucky plaintiffs and subsequently transferred to the MDL as part of the first wave of transfers. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1380 Sched. A (U.S. Jud. Pan. Mult. Lit.

2017).

Additionally, the procedural posture of these cases weighs in favor of granting a stay. Here, the JPML has already issued a conditional transfer order, which is currently being challenged.  [R. 1-5.]  Thus, the parties presumably are making similar arguments before the JPML already, and those arguments are currently being considered by a body possessing the advantage of familiarity with the facts and legal issues of hundreds of other related cases.  To deny the stay and definitively rule on the remand motion at this juncture would needlessly duplicate and waste judicial resources.

As for prejudice, neither party has shown that granting or denying a stay will cause significant hardship to either of them. Despite the Plaintiffs' contentions to the contrary, a temporary stay will not result in Plaintiffs "'join[ing] a veritable sea of others in the MDL Court' where the likelihood that Plaintiffs would be able to vindicate their claims in any reasonable time-frame is remote in the extreme."  [R. 12 at 16 (quoting *Dunaway v. Purdue Pharma L.P.,* 391 F. Supp. 3d 802, 808 (M.D. Tn. 2019).]  To acknowledge such an argument as persuasive would call into question the usefulness of any MDL proceeding.  Further, the JPML has recognized that remand motions can be decided post-transfer and can be resolved by the transferee judge.  *In re: Bayer Corp. Combination Aspirin Prods. Mktg & Sales Practices Litig.,* 609 F. Supp. 2d 1379, 1379–80 (J.P.M.L. 2009) (finding plaintiffs can still "present their motion to remand to state court to the transferee court" and thus are not deprived of that right by a transfer to the MDL court); *In Re: Prudential Ins. Co. of Am. Sales Practices Litig.,* 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) (the same).  Thus, not only are Plaintiffs able to present their jurisdictional arguments before the JPML in the context of challenging the conditional transfer order, but they can also make the same arguments before the MDL Court if the cases are

8

ultimately transferred.  The MDL Court also will have the benefit of complete familiarity with the facts alleged within the broader context of other cases, and therefore its resolution of the pending remand motions will prevent the risk of inconsistent rulings.  Manual for Complex Litigation (4th ed.) § 22.35.  Moreover, given the advanced stage of the challenge to the conditional transfer order, any stay issued will likely be of very short duration, and no significant delay will result.  Indeed, Wal-Mart represents that it anticipates the JPML will likely make a transfer decision a shortly following an upcoming hearing.  [R. 13 at 4.]

The court system's interest in judicial economy, fairness, and consistency is the factor that weighs most heavily in favor of granting a stay in this case.  Given the fact that thousands of similar cases have been transferred already, and the likelihood of many more cases being in a similar procedural posture, the interests of judicial economy and the threat of inconsistent rulings outweighs any potential prejudice to the Plaintiffs in this case.  *See Torres v. Johnson & Johnson*, 2014 WL 6910478, *3 (D.N.M. Sept. 16, 2014) ("Judicial resources are conserved by staying the action because, if the transfer order is ultimately granted, the Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge.").  As other district courts within the Sixth Circuit have recognized, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case."  *Kelly v. Aultman Physician Center*, 2013 WL 2358583, *2 (N.D. Ohio May 29, 2013) (quoting *Jackson v. Johnson & Johnson, Inc.*, No. 01–2113, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001)).  Where jurisdictional issues "are complex and their resolution is uncertain," and where such issues "are common to other cases already pending before the MDL court . . . and are likely to arise again," they "should be decided by the court overseeing the related cases on a coordinated basis."  *Curtis v. BP Am., Inc.*, 808 F.

Supp. 2d 976, 981 (S.D. Tex. 2011) (citing *Bd. of Trustees of the Teachers' Retirement Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002); *In re Penn Cent. Sec. Litig.*, 333 F. Supp. 382, 384 n. 4 (J.P.M.L. 1971) ("A stay of proceedings ... may be appropriate ... to avoid inconsistent judicial rulings."); Manual for Complex Litigation (4th ed.) § 22.35.  The Court will grant the stay requested by Defendant Wal-Mart.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Wal-Mart Inc.'s Motion to Stay [R. 10] is **GRANTED**;

2. All proceedings in this case, including the filing of responsive pleadings or motions, are **STAYED pending the final decision of the JPML** of whether to transfer the cases to the Northern District of Ohio for consolidation with other related cases; and

3. Defendants shall provide a written status report within thirty (30) days of the entrance of this Order regarding the status of the decision of the JPML as to whether to transfer the case to the Northern District of Ohio.

This the 1st day of December, 2020

Gregory F. Van Tatenhove
United States District Judge

10